# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PAULA MARAYONK,

    Plaintiff,

v.

COUNTRY MUTUAL INSURANCE
COMPANY, *et al*.,

    Defendants.

Case No. 2:12-CV-00017-KJD-PAL

**ORDER**

    Currently pending before is the Court the Motion to Compel Arbitration (#4) of Defendants Country Life Insurance Company, Country Investors Life Assurance Company, Country Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company, Mutual Service Life Insurance Company, Modern Service Insurance Company, MSI Preferred Insurance Company, Cotton State Life Insurance Company, Cotton States Mutual Insurance Company, Shield Insurance Company and CC Services, Inc. (collectively "Country Defendants") filed January 12, 2012. Plaintiff Paula Marayonk ("Plaintiff") filed an Opposition to Defendants' Motion to Compel Arbitration (#7) on January 30, 2012, to which Defendants filed a Reply (#9) on February 9, 2012.

**I. Background**

On August 6, 2007, Plaintiff entered into contracts entitled Country Insurance & Financial Services Agent's Agreement ("Agent's Agreement") and Country Agent Security Plan ("CASP") with Defendant. These two documents contained nearly identical arbitration provisions (the "agreements to arbitrate.")

Plaintiff filed her Complaint in the District Court for Clark County, Nevada, on December 1, 2011. Plaintiff seeks a declaration that the non-competition and non-solicitation clauses in the Country Insurance & Financial Services Agent's Agreement and Country Agent Security Plan (collectively the "Agreement") are invalid, and asserts causes of action for breach of contract for nonpayment under the Agreement, intentional interference with prospective economic advantages and intentional interference with contractual relations. Defendants removed this action to federal court on January 5, 2012.

On January 12, 2012, Defendants filed a Motion to Compel Arbitration seeking an order from this court to stay the proceedings of the Plaintiff's initial action and order the parties to engage in final and binding arbitration of Plaintiff's Claims as stated in the agreements to arbitrate and pursuant to Federal Arbitration Act, 9 U.S.C. § 4 ("FAA").

**II. Discussion**

**A. Federal Arbitration Act**

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 determines the arbitrability of disputes between parties to an agreement. Agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. In order for a dispute to be arbitrable under the FAA (1) there must exist a valid agreement to arbitrate between the parties; and (2) the dispute in question must fall within the scope of that arbitration agreement. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F. 3d 1126, 1130 (9th Cir. 2000). When

2

1  deciding whether parties agreed to arbitrate, courts should apply ordinary state-law principles that

2  govern the formation of contracts. *First Option of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

3        The Agent's Agreement states, "That any claim or controversy relating to or arising out of the

4  relationship between the Agent and the Companies, this agreement (and/or any agreement superseded

5  by this Agreement) … shall be resolved exclusively by binding arbitration in Bloomington, Illinois."

6  Agent's Agreement, Ex. 1, at § 2(k). Additionally, the CASP states, "… any further dispute between

7  the Claimant and the Company arising out of, or relating to, this Plan shall be resolved exclusively

8  by binding arbitration in Bloomington, Illinois." CASP, Ex. 2, at § 9.3.

9  **B. Unconscionability**

10        Plaintiff argues that the agreements to arbitrate are invalid because they are unconscionable.

11  Specifically, Plaintiff argues that the agreements to arbitrate are substantively unconscionable

12  because Plaintiff is a Nevada resident with limited financial means to litigate out of state and

13  procedurally unconscionable because the arbitration clauses were inconspicuous.

14        1.  Substantive Unconscionability

15        Substantive unconscionability focuses on the one-sidedness of a contract. In an arbitration

16  agreement, the agreement is unconscionable if there is no "modicum of bilaterality." The Court in

17  *Ting* stated, "the doctrine of unconscionability limits the extent to which a stronger party may,

18  through a contract of adhesion, impose the arbitration forum on the weaker party without accepting

19  that forum for itself." *Ting v. AT&T*, 319 F. 3d 1126, 1129 (9th Cir. 2003). However, a party

20  attempting to show the existence of substantive unconscionability in the arbitration forum must show

21  the agreement was affected by fraud, undue influence, or overweening bargaining power; that the

22  enforcement would be unreasonable and unjust. *Mitsubishi Motors Corp. v. Soler Chrysler-*

23  *Plymouth, Inc.*, 473 U.S. 614, 632 (1985). The Supreme Court has held that when the inconvenience

24  of the forum was foreseeable at the time of the contract, the claiming party bears a heavy burden of

25  proving the contractual forum will be so gravely difficult and inconvenient that he will for all

26

1   practical purposes be deprived of his day in court. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,
2   17 (1972).

3          Plaintiff argues she would suffer severe hardship if compelled to arbitration in Bloomington,
4   Illinois because she has limited financial resources.  According to Plaintiff she should not have to
5   litigate outside of Nevada because the underlying contracts were entered into here.

6          Plaintiff has not met the "heavy burden" required to show that she will, "for all practical
7   purposes be deprived of [her] day in court." *Id*. The agreements to arbitrate are  bilateral because
8   both the Plaintiff and the Defendant have the opportunity to mandate arbitration and select the
9   arbitrator.  Further, the potential inconvenience of the forum was foreseeable at the time Plaintiff
10  entered into the contract.  Accordingly, the agreements to arbitrate are not substantively
11  unconscionable.

12                    2.  Procedural Unconscionability

13         Procedural unconscionability exists "when a party lacks a meaningful opportunity to agree to
14  the clause terms either because of unequal bargaining power, as in an adhesion contract, or because
15  the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton,*
16  *Inc. v. Green*, 120 Nev. 549, 554, 96 P. 3d 1159, 1162 (2004). Procedural unconscionability
17  frequently involves the use of fine print, complicated, incomplete or misleading language. *Id*. In
18  assessing an arbitration agreement for procedural unconscionability courts should determine whether
19  the parties to the contract were given ample notice and were fully aware of the arbitration provision.
20  *Id.* at 557, 1164.

21         Plaintiff contends the agreements to arbitrate are procedurally unconscionable because neither
22  of the arbitration clauses are conspicuous and do not draw the reader's attention. Plaintiff argues that
23  she was not put on notice that she would be waiving rights. Plaintiff also claims that she was not able
24  to negotiate the terms of the agreements to arbitrate and was not asked to initial or acknowledge the
25  arbitration provision and that her inability to strike or change the provision constitutes a contract of
26  adhesion.

Nevada courts have never recognized an employment agreement as a contract of adhesion. *See Kindred v. Second Judicial Dist. Ct. ex rel. County of Washoe*, 116 Nev. 405, 411, 996 P. 2d 903, 907 (2000). The arbitration provisions of the Agent's Agreement and CASP are both located under a section or subsection with bold or underlined font and are the same size font as the other provisions in the respective agreements. Additionally, the agreements to arbitrate state they are the exclusive forms of resolving disputes and, "Judgment upon any arbitration award lawfully rendered may be entered and enforced in any court having jurisdiction." Agent's Agreement, Ex. 1, at § 2(k). The agreements to arbitrate do not appear in fine print, are not misleading, are ascertainable and are conspicuous such that Plaintiff was notified and made aware of the terms of the arbitration provisions at the time of the contract. The agreements to arbitrate are not contracts of adhesion and do not fail to adequately notify Plaintiff of the terms of the Agreements.  Accordingly, the agreements to arbitrate are not procedurally unconscionable.

**III. Conclusion**

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration (#4) is **GRANTED**.

DATED this 23rd day of May 2012.


Kent J. Dawson
United States District Judge

5